UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
FILED

NOV 1 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-656-GWU

CURTIS PACE, JR.,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Pace

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Pace

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Pace

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Pace

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Pace

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985). Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments. Varley v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Curtis Pace, Jr., was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of degenerative joint disease of the
knees bilaterally (status post multiple knee surgeries), a dysthymic disorder, and
borderline intellectual functioning. (Tr. 19). Nevertheless, based in part on the
testimony of a vocational expert (VE), the ALJ determined that Mr. Pace retained the
residual functional capacity to perform a significant number of jobs existing in the
economy and, therefore, was not entitled to benefits. (Tr. 21-5). The Appeals
Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether an individual
with the plaintiff's work history as a coal miner, water plant worker, and maintenance
man and "educational background" but "difficulty with reading and writing" could
perform any jobs if he were limited to "light" level exertion, and also had the following
non-exertional impairments. (Tr. 413). He: (1) required a sit/stand option at 15 to

7

Pace

30 minute intervals; (2) could not kneel; (3) could occasionally climb ladders, stoop, crouch, and crawl; (4) had a "seriously limited but not precluded" ability to deal with the public and understand, remember, and carry out detailed instructions; and (5) had no useful ability to understand, remember, and carry out complex instructions. (Id.).  He had a "limited but satisfactory" ability to make other performance, occupational, and personal/social adjustments. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 413-14).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

As the ALJ noted in her decision, the hypothetical question presumed that the individual could sit, stand, and walk six hours each an eight-hour day.  (Tr. 21-2). Almost all of the physicians involved in the plaintiff's treatment, which included two knee operations by Dr. Ronald Belhasen in late 2001 and early 2002 (Tr. 186, 212-13), as well as a reviewing state agency physician, indicated greater limitations in the plaintiff's ability to stand and walk, however.

Following two knee surgeries, and an arthroscopic evaluation, Dr. Belhasen indicated in July, 2002 that the plaintiff was still unable to resume his regular job, but he had been offered a position on the "guard duty only," to which the physician

8

agreed "provided that it is the only thing he will be asked to do." (Tr. 211). However, Mr. Pace reported that he was required to do considerable walking and to crawl under equipment to recharge batteries, and could not perform these activities. (Tr. 209). Dr. Belhasen concluded that Mr. Pace was "unable to perform any other duty than sitting and walking to his position." (Id.).

Dr. Ben Kibler, an orthopedist, treated the plaintiff for several months in 2003, initially noting that he was unable to stand on his left leg, could stand only a little on the right leg, and had profound abduction and hip flexor weakness as well as quadriceps weakness and tenderness to palpation in multiple areas. (Tr. 255). A CT scan of the left knee showed osteophytes. (Tr. 253). Dr. Kibler emphasized that the only treatment that would work was strengthening exercises, but as of September, 2003, therapy had not been helpful, and Dr. Kibler felt that there was no more that he could do except to give knee braces and "have him work on it." (Tr. 321). He provided restrictions dated September 23, 2003 stating that the plaintiff should do no pushing, pulling, or lifting over 20 pounds, should perform no prolonged (apparently defined as "two hours") standing and walking, no climbing, and "sit down work only." (Tr. 320).

Finally, the plaintiff's treating family physician, Dr. Rachel Eubank, wrote a letter dated June 7, 2004 stating that her patient had a "significant disabling knee

problem" that would preclude him from working within the next year, and would keep him from "going back to his usual occupation of coal mining." (Tr. 367).

The state agency physician, Dr. Timothy Gregg, had also concluded after a review of some of the evidence on October 30, 2002 that Mr. Pace would be limited to "light" level exertion, with standing and walking at least two hours in an eight-hour workday, sitting six hours, having a limited ability to push and pull with the lower extremities, no ability to kneel, occasionally stooping, crouching, crawling, and climbing ladders, ropes, and scaffolds. (Tr. 279-86).

Dr. Ronald Dubin conducted a one-time examination of the plaintiff on June 26, 2003. (Tr. 251). His examination showed tenderness of the lumbosacral spine with limited range of motion, pain over the left patella and diffuse tenderness over the anterior knee joint, but no ligament instability, and no loose bodies, fractures, or dislocations on a left knee x-ray, although there was evidence of a "previous pallectomy." (Id.). Dr. Dubin opined that Mr. Pace would not be able to return to work as a coal miner ever in the future, would probably be confined to a "sedentary type" job, and would be restricted from any bending, stooping, lifting, and crawling. (Id.). On a specific physical residual functional capacity assessment, Dr. Dubin stated that Mr. Pace could lift 10 pounds occasionally and five pounds frequently, could stand or walk 4-6 hours in an eight-hour day (no more than two hours without interruption), would have an unspecified limitation on sitting, could never stoop,

10

crouch, kneel, or crawl, and could occasionally climb and balance. (Tr. 301-2). Although the ALJ purported to give a hypothetical question based on these restrictions to the VE, it omitted any reference to balancing (Tr. 414), a crucial postural impairment per Social Security Ruling 85-15, p. 6. Moreover, the number of jobs available to a person with the other set of restrictions, according to the VE's testimony, was extremely low. (Tr. 413-14). In any case, Dr. Dubin's opinion about the plaintiff's ability to stand even that long, as a one-time examiner, is clearly entitled to less weight than the treating sources.

The plaintiff has also raised an issue regarding his mental functioning. The ALJ based the hypothetical mental restrictions on the opinion of Dr. Gary Maryman, a one-time examiner. (Tr. 295-6). While Reba Moore, another psychological examiner, found greater restrictions (Tr. 249-50), the ALJ was not required to accept her opinion over the equally-placed Maryman. Records from the plaintiff's treating sources at the Comprehensive Care Center do not give the specific restrictions, but do reflect that the plaintiff was diagnosed with a mood disorder and given a current Global Assessment of Functioning (GAF) score of 60. (E.g., Tr. 380). A GAF score of 60 is at the upper end of the range of "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. Therefore, the hypothetical mental factors were supported by substantial evidence. Both Moore and Maryman obtained IQ scores below 70 (Tr. 245, 292), but Maryman

11

Pace

opined that they were an underestimate of the plaintiff's true ability, and no school

records were provided showing anything other than that the plaintiff took three

attempts to pass the eighth grade and dropped out of school in the ninth grade (Tr.

122). Therefore, the plaintiff did not show the significantly subaverage adaptive

functioning prior to age 22 needed to meet requirements of the Commissioner's

Listing of Impairment 12.05C, even if the IQ scores were valid.[1]

The decision will be remanded for further consideration of the factors outlined

in this opinion.

This the ___/5___ day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[1]The Court notes in passing that both Reba Moore and Maryman obtained reading scores that fell in the essentially "illiterate" category as described in Skinner v. Secretary of Health and Human Services, 902 F.2d 447, 449 (6th Cir. 1990) which were not specifically mentioned to the VE, however, just "difficulty reading and writing." (Tr. 413).

12